**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| MODERN FONT APPLICATIONS LLC, a Utah limited liability company,<br><br>          Plaintiff,<br><br>     v.<br><br>RED LOBSTER HOSPITALITY LLC, a Delaware company,<br><br>          Defendant(s). | Case No. 6:21-cv-470<br><br>**JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Modern Font Applications LLC ("MFA" or "Plaintiff"), for its original complaint against Defendant Red Lobster Hospitality LLC ("Defendant") alleges as follows:

### INTRODUCTION

1.  MFA instituted the present action against Defendant for infringement of United States Patent No. 9,886,421 ("the '421 patent" or "patent in suit"), entitled "Allowing Operating System Access to Non-Standard Fonts in a Network Document" to prevent the unfair and unlawful exploitation of its intellectual property.  A copy of the '421 patent is attached hereto as **Exhibit A**.  The disclosure of the '421 patent is incorporated herein by reference. MFA seeks an injunction against Defendant's unlawful conduct, as well as an award of damages and attorneys' fees as provided by law.

2.  The patent in suit discloses apparatuses and methods for delivery and rendering of non-

standard or external fonts within a network system.

3.  Robert G. Adamson, III is the inventor of the patent in suit.

4.  Mr. Adamson has been a computer scientist since at least 1971.  In 1981, Mr. Adamson founded Software Generation Technology Corp. and wrote one of the first fully interpretive languages for IBM mainframe computers.

5.  Mr. Adamson later founded Nostradamus Inc. and wrote Instant Replay, one of the first multimedia tools for personal computers.  This tool was used by thousands of large companies, including Intel, Microsoft, and Novel.  Mr. Adamson also wrote utilities including Noblink and Hardrunner, both of which received Editor's Choice awards from PC Magazine.

6.  Mr. Adamson later wrote MediaForge, one of the first multimedia authoring tools for the Windows operating system.  MediaForge was sold to Strata and was a "Best of Comdex" finalist in development software in 1994.  Over 50 million MediaForge runtimes were distributed.

7.  Mr. Adamson has been an active developer of application authoring technology since the 1990s.

8.  In 2001, Mr. Adamson founded a technology company to develop software.  That company currently offers software development services utilizing font delivery technology.

9.  Mr. Adamson later founded a technology company that incorporates font delivery technology with digital photo editing.  Mr. Adamson currently works with this company to offer a commercial software development kit (SDK) for authoring digital photo applications including font delivery capabilities.

10. Mr. Adamson's font delivery technologies predate the field of mobile applications for smart phones by several years.  Mr. Adamson filed the priority application for the patent in suit in 2001.

11. Upon information and belief, in 2003, development of the Android operating system

began.

12. Upon information and belief, in 2007, the iPhone and iOS were introduced to the public.

13. Upon information and belief, in 2007, the Android operating system was introduced to the public.

14. Upon information and belief, in 2008, the first mobile application stores were opened online.

**THE PARTIES**

15. MFA is a Utah limited liability company with its principal place of business in Salt Lake City, Utah. MFA is the exclusive licensee of the patent in suit and continues to hold all substantial rights, including the right to sue for infringement and to collect all damages (including past damages) for infringement of the patent in suit.

16. On information and belief, Defendant is organized and registered in the State of Delaware.  On information and belief, Defendant's registered agent and address for service of process is Corporate Creations Network Inc., 5444 Westheimer #1000, Houston, TX  77056.

17. On information and belief, Defendant operates one or more regular and established place(s) of business in this state and this judicial district.  For example, on information and belief, Defendant operates stores located at 5925 West Waco Drive, Waco, TX  76710, as well as additional stores in at least the following Texas cities: Austin, Round Rock, San Marcos, Killeen, San Antonio, El Paso, and Odessa.

18. A photograph of the exterior of Defendant's store at 5925 West Waco Drive, Waco, TX 76710 retrieved from Google Maps is set forth below and demonstrates that this store displays Defendant's "Red Lobster" name on the exterior.  This store is listed on Defendant's website as

one of Defendant's regular and established places of business in Texas:



19. Defendant makes, sells, offers for sale, uses, and/or imports one or more products and or systems, including mobile applications, that infringe at least one claim of the patent in suit, as further alleged herein.

20. Upon information and belief, the accused software, products, systems, and methods are used and/or made in the state of Texas and in this judicial district by Defendant (at least through its employees in Texas stores) and/or others (including, for example, Defendant's customers) induced by Defendant to use and/or make such products, systems and methods.

<u>**JURISDICTION AND VENUE**</u>

21. MFA incorporates by reference paragraphs 1 through 20 above.

22. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1338(a) because this action arises under the patent laws of the United States of America, i.e., Title 35 of the United States Code.

23. Venue is proper in this judicial district pursuant to 28 U.S.C. §1400(b).

<u>**THE ASSERTED PATENT**</u>

24. The '421 patent claims improvements in the field of computer technology, including improvements in technology for the delivery and use of non-standard or external fonts within a

4

network system, as set forth in the '421 patent and further demonstrated in the following paragraphs.

25. At the time that Mr. Adamson filed the priority application in 2001, the claimed elements and claimed combinations in the '421 patent were not well-understood, routine, or conventional to a skilled artisan in the relevant field. The claims of the patent in suit cover patent eligible subject matter, are not directed to an abstract idea, and contain  inventive concepts sufficient to transform any abstract idea into a patent-eligible application, as set forth in the '421 patent and further demonstrated in the following paragraphs.

26. As set forth in the '421 patent, "electronic documents requested by a reader are displayed on the reader's computer using only the fonts that are currently loaded on the reader's computer. Accordingly, if the reader's computer does not contain the same fonts that were used by the author in creating the electronic document, the electronic document is displayed on the reader's computer in a form different than that originally created by the author. Generally, the operating system of the reader's computer replaces the unknown fonts with known fonts when displaying the electronic document."

27. As set forth in the '421 patent, "Several attempts have been made to ensure that electronic documents made with non-standard fonts are displayed on a reader's computer in the same form, i.e., same font(s), as created by the author. One commonly used method is to represent the text as images in a digital format, such as bitmaps or jpeg files. These digital images, however, cannot be resized without a loss of quality. For example, if a digital picture of a text character is enlarged, the resolution of the text character is also enlarged, thereby degrading the visual appearance of the character both on the screen and in print."

28. As set forth in the '421 patent, "characters represented as image files are typically much larger than characters represented by fonts. Accordingly, using an image file increases the size of

the electronic document, thereby increasing its download time. In addition, image files take longer to display on a screen. Thus, operations such as scrolling that require an image to be frequently rendered are slowed down and otherwise degraded. Finally, characters represented as image files cannot be stylized. For example, such characters cannot be italicized."

29. As set forth in the '421 patent, "In another attempted solution, a first computer includes a document builder that receives input text so that the input text may be represented in the document. The input text is originally defined using pre-defined font descriptions. The document builder then creates a new font description (hereinafter called a "proprietary vector font description") for the input text with the aid of a character shape recorder. The proprietary vector font description is then placed in the document. The first computer system then delivers the document to a second computer system.  The second computer system includes a character shape player which is uniquely configured to interpret the proprietary vector font descriptions included in the document. If the second computer system does not already have the character shape player, the character shape player may be downloaded with the document."

30. As set forth in the '421 patent, "the proprietary vector font description is not standard to a reader's operating system. Accordingly, this solution requires the use of the character shape player by every reader's computer that is to display an electronic document containing the proprietary vector font. Many applications may not be configured to access the services of the character shape player. Accordingly, this solution does not allow the fonts represented by the proprietary vector font description to be freely copied and pasted into or otherwise used, such as by printing, by other applications that do not access the services of the character shape player. In addition, even if an application had access to the object player mechanism, the fonts cannot be rendered as efficiently as they could if the operating system itself was capable of interpreting the

fonts. Accordingly, operations such as scrolling of the fonts is sluggish."

31. As set forth in the '421 patent, "what are desired are methods, systems, and computer program products for allowing characters of fonts that are not standard to an operating system of a reader's computer to be conveniently used by the operating system to facilitate viewing, copying, pasting, printing, and/or editing of the characters in different applications."

32. As set forth in the '421 patent, "The computer automatically executes the installation software which in turn either permanently installs or temporarily exposes the computer readable formatting information to the operating system so as to enable the operating system to render the characters of the non-standard fonts. As a result, the network document is generated and displayed by the computer using the same characters with which it was originally created."

33. As set forth in the '421 patent, "in one embodiment the installation or exposure of the computer readable formatting information is done in a manner that the operating system of the computer has at least temporary access to utilize the characters of the nonstandard fonts. That is, the operating system is able to use the characters of the nonstandard fonts in the same way that it uses characters of original standard fonts. The operating system is thus able to efficiently copy, paste, print, modify, and otherwise edit the characters of the non-standard fonts."

34. As set forth in the '421 patent, "one of the problems of the prior art is that an increasing number of electronic documents are being created using unique characters wherein corresponding formatting information is not loaded on or otherwise available to a browsing computer, i.e., non-standard characters. Accordingly, when a browsing computer downloads the electronic document over a network or otherwise receives and opens the electronic document, the electronic document is displayed on the browsing computer without the non-standard characters or by replacing the non-standard characters with other characters that are available to the browsing computer. In any event, the electronic document is displayed in a format different from

that intended at its creation."

35. As set forth in the '421 patent, "One of the unique benefits of the present invention is that once font files 312 are enabled on browsing computer 204, the characters within font files 312 can be used the same as any of the font characters originally loaded on browsing computer 204. For example, the characters of font files 312 can be cut, pasted, printed and otherwise handled or manipulated, i.e., underlined, italicized, bolded, etc., just the same as originally loaded font characters. In turn, this increases efficient inter-application functionality. For example, the characters of font files 312 can also be copied and pasted to any other application being control by operating system 505, for example, applications 510a or 510b as depicted in FIG. 6."

36. As set forth in the '421 patent, "the principles of the present invention allow the operating system of a browsing computer access to non-standard characters when the browsing computer either retrieves off of the Internet or otherwise opens a network document or application that uses the non-standard characters. This allows the author of the electronic document or application to feel secure that no matter how unique the characters chosen to convey a message, the characters will be rendered on the browsing computer as the author intended. In addition, in one embodiment, the operating system can now use the nonstandard characters for copying and pasting across applications, as well as any other editing or printing that is enabled by the operating system, thus enhancing the functionality to the end user."

37. Pursuant to Rule 11(b)(3), upon information and belief, the factual contentions -- that the asserted claims cover improvements in the field of computer technology, are not directed to an abstract idea, and that the claimed elements and claimed combinations in the '421 patent were not well-understood, routine or conventional to a skilled artisan in the relevant field and contain an inventive concept sufficient to transform any abstract idea into a patent-eligible application -- will likely have additional evidentiary support after a reasonable opportunity for further

investigation or discovery.

**FIRST CLAIM FOR RELIEF**

(Infringement of U.S. Patent No. 9,886,421)
(Against Defendant)

38. MFA incorporates by reference paragraphs 1 through 37 above.

39. On February 6, 2018, the '421 patent was duly and legally issued for an invention

entitled: "Allowing Operating System Access to Non-Standard Fonts in a Network Document."

40. Since at least June 2018, substantially all the licensed patent articles have been marked in

accordance with 35 U.S.C. §287, thereby putting Defendant and the public on notice of the '421

patent.  Defendant has further had notice of the '421 patent since November 2019, when MFA

sent Defendant a letter via certified mail and informed Defendant to "Please consider this letter

as formal notice that Red Lobster Hospitality LLC ('you') are infringing at least claims 1, 6, and

11 of Modern Font Applications LLC's ('MFA') U.S. Patent No. 9,886,421 (the '421 patent')  in

the state of Utah (and likely other states), at least through your My Red Lobster Rewards

application for iOS devices (including version 1.14.0 released July 17, 2019) and your My Red

Lobster Rewards application for Android devices (including version 1.14.0 released July 17,

2019)."

41. As described more fully in the incorporated disclosure of the '421 patent, the inventions

of the '421 patent are improvements over prior art and subsequent patentably distinct means and

methods of font delivery, and the '421 patent enables a combination of features not present in the

prior art or other non-infringing means and methods.

42. Defendant has directly infringed and continues to directly infringe at least claims 1 and

11, and upon information and belief claim 6, and dependent claims of the '421 patent through

making, using, selling, offering for sale, and/or importing of Defendant's products and services

including, but not limited to Defendant's My Red Lobster Rewards application for iOS devices (including version 1.14.0 released July 17, 2019 and version 1.20.4 released April 2021) and Defendant's My Red Lobster Rewards application for Android devices (including version 1.14.0 released July 17, 2019 and version 1.20.4 released April 2021) (the "Red Lobster Software"). For example, Defendant infringes the '421 patent at least by combining the Red Lobster Software with a non-transitory computer-readable medium (*e.g.*, through uploading the Red Lobster Software to the Apple App Store or Google Play) or by combining the Red Lobster Software with a hand-held device (*e.g.*, by downloading the Red Lobster Software onto iOS and Android based smart phones), by inducing others to do the same, and by contributing to others doing the same.

43. Claim 1 states, "A non-transitory computer-readable medium adapted for use with a computer.

44. As stated in claim 1, Defendant provides the Red Lobster Software via a storage device attached to a computer, which is a non-transitory computer-readable medium adapted for use with a computer. This includes the storage devices incorporated within the Google Play service and the Apple App Store service. This also includes Defendant's own storage devices on which Defendant stores the Red Lobster Software. Within the storage devices, Defendant provides the iOS application in a computer-readable file and the Android application in a computer-readable file.

45. Claim 1 states, "…coupled to a network such that select information on the non-transitory computer-readable medium is accessible by a hand-held device having an operating system and coupled to the network…"

46. As stated in claim 1, the Google Play service and the Apple App Store service through which the Defendant provides the Red Lobster Software are coupled to the Internet so that

Defendant's Red Lobster Software is accessible and downloadable by users of hand-held devices having the iOS and Android operating systems when they are connected to the Internet.

47. Claim 1 states, "an electronic file package including a plurality of display characters and computer executable instructions for identifying the plurality of display characters for display and for identifying one or more external fonts used to render at least one of the plurality of display characters.

48. As stated in claim 1, Defendant's Red Lobster Software provides an electronic file package including a plurality of display characters and computer executable instructions for identifying the plurality of display characters for display and for identifying one or more external fonts used to render at least one of the plurality of display characters.  The Android application file's root directory contains at least one file package.  This includes, for example, .xml and/or .arsc files.  These files include (a) characters to be displayed when the Android application is used, (b) computer executable instructions for identifying characters to be displayed, and (c) computer executable instructions for identifying external fonts used to render the characters. Within the iOS application file, Defendant provides at least one file package, for example, the executable file in a /redlobster.app/ directory within the /Payload/ directory.  Defendant also provides .nib files and .strings files.  These files include (a) characters to be displayed when the iOS application is used, (b) computer executable instructions for identifying characters to be displayed, and (c) computer executable instructions for identifying external fonts used to render the characters.  Such characters include at least the characters "REWARD", "SEAFOOD CRAVINGS.", "Every $1 = 1 point", "125 points = a tasty reward", "Score delicious deals, special surprises and more", etc. rendered in the Lubalin and Gotham fonts, as indicated in the

screen captures below, from the Android application and the iOS application, respectively:





Such characters further include at least the characters "Reward your Seafood Cravings", "Every $1 = 1 point", "125 points = a tasty reward", "Only 50 Points until your next reward", "ORDER TO GO:", etc. rendered in the Nobel font.

49. Claim 1 states, "a font package comprising one or more external font files that include formatting information necessary for the hand-held device to render the at least one of the

plurality of display characters using the one or more identified external fonts.

50. As stated in claim 1, Defendant's Red Lobster Software provides a font package comprising one or more external font files that include formatting information necessary for the hand-held device to render the at least one of the plurality of display characters using the one or more identified external fonts.  Within at least one version of the Android application file, Defendant provides at least one font package in a directory named /assets/fonts/.  Each of the font packages comprises at least one external font file, including BernhardFashionStd.otf, Frankfurter.otf, gotham_bold_italic.ttf, GothamBlack.otf, GothamBold.otf, GothamBook.ttf, gothambookitalic.ttf, gothamlightitalic.ttf, GothamMedium.ttf, GothamMediumItalic.ttf, LubalinGraphStd.ttf, and lubalingraphstdlow.ttf.  Within at least one other version of the Android application file, Defendant provides at least one font package in a directory named /assets/fonts/ that comprises at least one external font file, including Nobel-Bold.otf, Nobel-BoldItalic.otf, Nobel-Book.otf, Nobel-BookItalic.otf, Nobel-Italic.otf, Nobel-Regular.otf, and at least sixteen files with .ttf extensions, including MaterialCommunityIcons.ttf.  Within at least one version of the iOS application file, Defendant provides at least one font package in the /redlobster.app/ subdirectory of the /Payload/ directory.  Each of the font packages comprises at least one external font file, including Gotham-Black.otf, Gotham-BlackItalic.otf, Gotham-Bold.otf, Gotham-BoldItalic.otf, Gotham-Book.otf, Gotham-BookItalic.otf, Gotham-Light.otf, Gotham-LightItalic.otf, Gotham-Medium.otf, Gotham-MediumItalic.otf, Gotham-Thin.otf, Gotham-ThinItalic.otf, Gotham-Ultra.otf, Gotham-UltraItalic.otf, Gotham-XLight.otf, Gotham-XLightItalic.otf, and LubalinGraphStd-Demi.ttf.  Within at least one other version of the iOS application file, Defendant provides at least one font package in the /redlobster.app/ subdirectory of the /Payload/ directory that comprises at least one external font file, including Nobel-Bold.otf, Nobel-BoldItalic.otf, Nobel-Book.otf, Nobel-BookItalic.otf, Nobel-Italic.otf, Nobel-Regular.otf,

and at least sixteen files with .ttf extensions, including MaterialCommunityIcons.ttf.

51. As stated in claim 1, at least one of the font packages within each of the Android application file and the iOS application file include formatting information necessary for the hand-held device to render the at least one of the plurality of display characters using the one or more identified external fonts, as demonstrated by the analyses below:

---

Font name: ITC Lubalin Graph Std Book
Version: Version 1.00 Build 1000
OpenType Layout, Digitally Signed, TrueType Outlines

abcdefghijklmnopqrstuvwxyz ABCDEFGHIJKLMNOPQRSTUVWXYZ 1234567890.:,; ' " (!?) +-*/=

12  The quick brown fox jumps over the lazy dog. 1234567890
18  The quick brown fox jumps over the lazy dog. 1234567890
24  The quick brown fox jumps over the lazy dog
36  The quick brown fox jumps ov
48  The quick brown fox ju

---

Font name: ITC Lubalin Graph Std Book
Version: Version 1.00 Build 1000
OpenType Layout, Digitally Signed, TrueType Outlines

abcdefghijklmnopqrstuvwxyz ABCDEFGHIJKLMNOPQRSTUVWXYZ 1234567890.:,; ' " (!?) +-*/=

12  The quick brown fox jumps over the lazy dog. 1234567890
18  The quick brown fox jumps over the lazy dog. 1234567890
24  The quick brown fox jumps over the lazy dog.
36  The quick brown fox jumps ov
48  The quick brown fox ju

---

52. Claim 1 states, "the font package separate from the computer executable instructions for

identifying the plurality of display characters for display."

53. As stated in claim 1, Defendant's Red Lobster Software provides the font package separate from the computer executable instructions for identifying the plurality of display characters for display.   Within the Android application file, the font package is a file in the /assets/ directory, whereas the computer executable instructions are in, for example, the root directory.   They are separate files.   Within the iOS application file, the font package includes at least one .otf file and at least one .ttf file, whereas the computer executable instructions are in an executable file without any extension or in the .nib or .strings files.   They are separate files.

54. Claim 1 states, "an exposure module for installation of the one or more external font files in a temporary fonts directory on the hand-held device…"

55. As stated in claim 1, Defendant's Red Lobster Software provides an exposure module for installation of the one or more external font files in a temporary fonts directory on the hand-held device.   In the Android application, the exposure module is a file with a .apk extension that contains the /assets/ directory.   The temporary fonts directory is the /assets/fonts/ directory, which is deleted whenever the Android application is updated or whenever the Android application is removed from a device.   The .apk file ensures that the external font files are placed in the proper temporary fonts directory when installed on a handheld device.   In the iOS application, the exposure module is a file with a .ipa extension that contains the /Payload/ directory and at least the /redlobster.app/ sub-directory.   The temporary fonts directory is a sub-directory of the /Payload/ directory, which is deleted whenever the iOS application is updated or whenever the iOS application is removed from a device.   The .ipa file ensures that the external font files are placed in the proper temporary fonts directory when installed on a handheld device.

56. Claim 1 states, "the one or more external font files being received from the computer responsive to the computer receiving a request for the font package from the hand-held device so

that the hand-held device can render the at least one of the plurality of display characters using the one or more external font files…"

57. As stated in claim 1, Defendant's Red Lobster Software provides the one or more external font files being received from the computer responsive to the computer receiving a request for the font package from the hand-held device so that the hand-held device can render the at least one of the plurality of display characters using the one or more external font files. For the Red Lobster Software, the external font files identified above are received from an application store server where Defendant makes them available (e.g., the Google Play store or iTunes store servers) responsive to that server receiving a request for the font package and the remainder of the application.  That request is sent by the handheld device.  The request is sent so that the handheld device can install and use the application, so that the handheld device can render the display characters using the font files.

58. Claim 1 states, "whereby when the plurality of display characters are displayed, the plurality of display characters are displayed by a program module of the operating system using the one or more external font files…"

59. As stated in claim 1, Defendant's Red Lobster Software provides that when the plurality of display characters are displayed, the plurality of display characters are displayed by a program module of the operating system using the one or more external font files.  In the Red Lobster Software, when the display characters are displayed, they are displayed by a program module of the operating system using the one or more external font files in the .apk or .ipa.  This is known because iOS and Android operating systems primarily use software for generating the information about what is displayed, rather than hardware, and the font files in the Red Lobster Software are provided in a manner for use by software.

60. Claim 1 states, "wherein in response to the one or more external font files being installed,

a system font table of the hand-held device is updated to reflect an availability of the external font files."

61. As stated in claim 1, Defendant's Red Lobster Software provides that in response to the one or more external font files being installed, a system font table of the hand-held device is updated to reflect an availability of the external font files.  After the application is installed and prior to rendering of the display characters, a system font table present in the operating system is updated to reflect that the external font files are available for use when executing the application. For example, in the iOS App, Defendant provides a font listing in the Info.plist file using the UIAppFonts key.   The iOS system loads the fonts specified by this key and makes them available for use by the iOS application.   For example, in the Android application, inclusion of the external font file in the /assets/fonts/ directory causes the operating system to load the fonts and make them available for use.

62. In addition to the elements identified above, the Red Lobster Software (and/or use of the Red Lobster Software) include the elements of at least claims 3, 4, 6, 7, 8, 9, 10, 11, and 13 of the '421 patent.

63. Defendant has made and/or had made the Red Lobster Software and downloaded and/or had downloaded the Red Lobster Software onto hand-held devices.

64. On information and belief, Defendant has instructed and continues to instruct employees to download the Red Lobster Software onto hand-held devices so that employees can use the Red Lobster Software in the course of their employment and so that employees can assist Defendant's customer's use and show Defendant's customers how to use the Red Lobster Software.

65. On information and belief, Defendant has directly infringed the '421 patent in the State of Texas among other locations, including, for example, through the employees of its Texas stores by making, using, and/or importing the Red Lobster Software, as set forth herein.  Pursuant to

17

Rule 11(b)(3), the factual contentions in this paragraph are likely to have further evidentiary support after a reasonable opportunity for further investigation or discovery.

66. Upon information and belief, said employees in Defendant's Texas stores have knowledge and information relating to Red Lobster and the Red Lobster Software, and are located in Texas.

67. Upon information and belief, while performing their work duties on behalf of Defendant, Defendant's employees in Defendant's Texas stores use computer hardware comprising at least their handheld devices located in Texas in connection with the Red Lobster Software.

68. Upon information and belief, Defendant encourages its employees in its Texas stores to download and use the Red Lobster Software and such employees do download and use the Red Lobster Software, thereby directly infringing the '421 patent in their work duties as Defendant's employees.  Upon information and belief, such activities were undertaken in the course of the employees' work for Defendant.  Pursuant to Rule 11(b)(3), the factual contentions in this paragraph are likely to have further evidentiary support after a reasonable opportunity for further investigation or discovery.

69. For example, Defendant's downloading and use of the Red Lobster Software in Defendant's Texas stores constitutes direct infringement of at least claim 11 of the '421 patent by at least making and using a patented invention during the term of the '421 patent, under 35 U.S.C. §271(a).

70. Claim 11 of the '421 patent states, "A hand-held device coupleable to a network such that the hand-held device can receive information from a non-transitory computer-readable medium adapted for use with a second computer coupled to the network, the hand-held device comprising."  As stated in claim 11, the smart phone devices used by Defendant's employees are hand held devices.  Smart phones operating the iOS operating system or the Android operating

system are coupleable to cellular and wifi networks, and in some instances, other networks.
Smart phones can receive information from storage hardware adapted for use with another
computer, such as a server, desktop, or laptop computer that is coupled to the same network.

71. Claim 11 of the '421 patent states, "a display; a processing unit; and memory to store
instructions…"  As stated in claim 11, the hand held devices identified in the preceding
paragraph included a display, also referred to as a screen or an LCD.  Upon information and
belief, every hand held device operating on iOS includes an LCD screen.  Upon information and
belief, every hand held device operating on Android OS includes an LCD screen.  The hand held
devices identified in the preceding paragraph also included a processing unit in the form of a
microprocessor.  Upon information and belief, hand held devices operating on iOS include
processors designated as one of A5, A6, A7, A8, A9, A10, A11, A12, or A13.  Upon information
and belief, hand held devices operating on Android OS use different processors depending on the
manufacturer, but the ability to display information on the LCD screen indicates that a processor
is present.  Upon information and belief, every hand held device operating on iOS and Android
OS includes memory to store instructions in the form of RAM memory and NAND memory.
Such memory is where the Red Lobster Software and the operating system are stored when
downloaded to an iOS or Android OS hand held device.

72. Claim 11 of the '421 patent states "… instructions that, when executed by the processing
unit, cause the processing unit to: enable communication between the hand-held device and the
second computer coupled to the network…"  Upon information and belief, as stated in claim 11,
all iOS and Android OS hand held devices include one or more of WiFi, cellular, Bluetooth, and
other communication hardware that is enabled to communicate with networks and networked
computers by the instructions stored in the memory that are executed by the processor (identified

above).

73. Claim 11 of the '421 patent states, "download an electronic file from the second computer." Upon information and belief, all iOS hand held devices that are current since the '421 patent issued are configured with instructions in memory to download electronic files from the Apple App Store where they are stored on a computer after being placed there by Defendant. Upon information and belief, all Android OS hand held devices that are current since the '421 patent issued are configured with instructions in memory to download electronic files from the Google Play store where they are stored on a computer after being placed there by Defendant.

74. Claim 11 of the '421 patent states, "the electronic file including computer executable instructions for identifying two or more display characters for use in a program application and for identifying a font used to render at least one display character of the two or more display characters for use in the program application…" Defendant's Red Lobster Software provides an electronic file that includes these features. The Android application file's root directory contains at least one file. This includes, for example, .xml and/or .arsc files. These files include (a) characters to be displayed when the Android application is used, (b) computer executable instructions for identifying characters to be displayed, and (c) computer executable instructions for identifying fonts used to render the characters. Within the iOS application file, Defendant provides at least one file, for example, the executable file in a directory within the /Payload/ directory. Defendant also provides .nib files and .strings files. These files include (a) characters to be displayed when the iOS application is used, (b) computer executable instructions for identifying characters to be displayed, and (c) computer executable instructions for identifying fonts used to render the characters. Such characters include at least the characters "REWARD", "SEAFOOD CRAVINGS.", "Every $1 = 1 point", "125 points = a tasty reward", "Score delicious deals, special surprises and more", etc. rendered in the Lubalin and Gotham fonts, as

indicated in the screen captures above.  Such characters further include at least the characters "Reward your Seafood Cravings", "Every $1 = 1 point", "125 points = a tasty reward", "Only 50 Points until your next reward", "ORDER TO GO:", etc. rendered in the Nobel font.

75. Claim 11 of the '421 patent states, "wherein the computer executable instructions reference a font package comprising computer readable formatting information necessary for an operating system of the hand-held device to render the at least one display character on the display using the font…"  Defendant's Red Lobster Software provides these features.  Within the Android application file, Defendant provides font packages in a directory named /assets/fonts/. Each of the font packages comprises an external font file.  Within the iOS application file, Defendant provides font packages in the /redlobster.app/ subdirectory of the /Payload/ directory. Each of the font packages comprises a font file and the computer executable instructions reference these font packages.

76. Claim 11 of the '421 patent states, "install an exposure module on the hand-held device the exposure module for automatically installing or exposing the font package to the hand-held device so that the hand-held device can render the at least one display character using the font." Defendant's Red Lobster Software provides these features.  In the Android application, the exposure module is a file with a .apk extension that contains the /assets/ directory.  In the iOS application, the exposure module is a file with a .ipa extension that contains the /Payload/ directory and at least one sub-directory.  The instructions on the memory cause the exposure module to be installed on the hand held device when Defendant's Red Lobster Software is downloaded to the hand held device.

77. Claim 11 of the '421 patent states, "cause the exposure module to install at least a portion of the font package to a temporary fonts directory of the hand-held device so that a program module of the hand-held device can render the at least one display character using the font,

whereby when the at least one display character is displayed, the at least one display character is displayed using the font…"  Defendant's Red Lobster Software provides these features.  In the Android application, the temporary fonts directory is the /assets/fonts/ directory, which is deleted whenever the Android application is updated or whenever the Android application is removed from a device.  The .apk file ensures that the external font files are placed in the proper temporary fonts directory when installed on a handheld device.  In the iOS application, the temporary fonts directory is a sub-directory of the /Payload/ directory, which is deleted whenever the iOS application is updated or whenever the iOS application is removed from a device.  The .ipa file ensures that the external font files are placed in the proper temporary fonts directory when installed on a handheld device.  Use of Defendant's Red Lobster Software on an iOS or Android OS hand held device demonstrates the presence of instructions that permit a program module of the hand held device to render and display the display characters using the font and, as demonstrated in the screenshots above, the display characters are displayed using the font, e.g., the Lubalin and Gotham fonts.

78. Claim 11 of the '421 patent states, "cause a system font table of the hand-held device to be updated to reflect an availability of the font."  Defendant's Red Lobster Software provides these features.  For example, in the iOS App, Defendant provides a font listing in the Info.plist file using the UIAppFonts key.   The iOS system updates a system font table using the information specified by this key to reflect that the fonts are available for use by the iOS application.   For example, in the Android application, inclusion of the external font file in the /assets/fonts/ directory causes the operating system to update a system font table and make the fonts available for use.

79. Thus, by way of example, upon information and belief, each of the features of claim 11 of the '421 patent is present in the hand held devices of Defendant's employees in the Texas

stores.  Defendant directly infringes, for example, claim 11 of the '421 patent, at least by making

and using the claimed hand held devices by downloading Defendant's Red Lobster Software

onto these hand held devices and by using Defendant's Red Lobster Software on these hand held

devices.

80. Pursuant to Rule 11(b)(3), the factual contentions regarding Defendant's Red Lobster

Software are likely to have further evidentiary support after a reasonable opportunity for further

investigation or discovery.

81. Defendant has actively induced and continues to actively induce others to infringe the

'421 patent.  Defendant's advertisements and marketing materials, including but not limited to

internet websites, advertisements, and Defendant's product listing(s) in online application stores

accessible to the public encourage customers to infringe the '421 patent through making, using,

selling, offering for sale, and/or importing of products, services, and methods incorporating the

Red Lobster Software.  As of the filing date of the complaint, Defendant's internet websites and

advertisements remained available and have continued to encourage customers to infringe the

'421 patent.  For example, the webpage at https://www.redlobster.com/rewards encourages

customers to use Defendant's Red Lobster Software and/or make products in an infringing

manner.  These internet websites include directions to "Download our App", "Download on the

App Store", and "GET IT ON Google Play", along with links to both the referenced App Store

and Google Play.  It further includes directions to use the Red Lobster Software to "[A]ccess

your account … through the app."

82. As of the date of the complaint, Defendant continued to actively induce others in Texas

and other states to infringe the '421 patent through Defendant's product listings in online

application stores that encourage customers to infringe the '421 patent through making, using,

selling, offering for sale, and/or importing of products, services, and methods incorporating the

Red Lobster Software.  These product listings include listings found at

https://play.google.com/store/apps/details?id=com.cardfree.android.redlobster&hl=en_US&gl=U

S and https://apps.apple.com/us/app/my-red-lobster-rewards/id1130568870.  These listings

demonstrate specific intent to induce infringement by demonstrating that Defendant specifically

intends its customers to download and use the Red Lobster Software, both acts of infringement

of the '421 patent.

83.   Defendant's acts of inducing infringement in Texas include directing emails that induce

infringement to customers in Texas.  Defendant sends emails to Defendant's customers who

sign(ed) up for Defendant's rewards program called "My Red Lobster Rewards".  The emails are

sent after the customer provides an address to Defendant.  Upon information and belief, such

emails have been sent to Texas customers both prior to and after November 2019.  The emails

induce infringement by encouraging Texas customers to download and use the Red Lobster

Software through the instructions, "Get the app in a snap" and "In addition to accessing your

points and rewards, you can join the wait list, order online, or find your nearest Red Lobster all

on the My Red Lobster Rewards app" as indicated in the screen capture below:



This email demonstrates specific intent to induce infringement by customers in Texas, demonstrating that Defendant specifically intends its customers to download and use the Red Lobster Software, both acts of infringement of the '421 patent.

84. Defendant further contributes to the infringement of the '421 patent. The identified products and services are especially made or especially adapted for use in practicing the patented inventions of the '421 patent in a manner that infringes the '421 patent, constitute a material part of the invention of the '421 patent, are not staple articles or commodities of commerce, and are

not suitable for substantial non-infringing use.  Each download of the identified products constitutes infringement.  Because the infringing features of the identified products are actively used each time the identified products are used, there is no substantial way to use the identified products without infringing the '421 patent.

85. Thousands of Defendant's customers have downloaded the Red Lobster Software onto hand-held devices, including onto iOS and Android based smart phones.  For example, Google Play indicates that the Red Lobster Software has been installed over one million times and the App Store indicates that over two thousand reviews have been left for the Red Lobster Software. Each of Defendant's customers that have downloaded the Red Lobster Software onto such hand-held devices infringe the '421 patent at least by downloading the Red Lobster Software on such hand-held devices.  At least as early as November 2019, Defendant knew or should have known that its customers were infringing the '421 patent by downloading the Red Lobster Software on such hand-held devices. Defendant knew or should have known that its advertising encouraging customers to download the Red Lobster Software would induce customers to infringe the '421 patent. Defendant's conduct constitutes induced infringement.

86. Defendant has continued to infringe the '421 patent both directly and indirectly (through inducement) after being put on notice of its infringing conduct, at least by MFA's letter to Defendant in 2019.  After being put on notice of its infringing conduct, Defendant knew or should have known that its conduct constitutes infringement of the '421 patent, but Defendant has knowingly continued to infringe the '421 patent. Defendant ignored MFA's notice of infringement in a reckless manner, as defined by *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923, 1933 (2016) ("a person is reckless if he acts 'knowing or having reason to know of facts which would lead a reasonable man to realize' his actions are unreasonably risky."). Defendant was informed of infringement by MFA. Defendant's infringement of the

'421 patent is willful. Defendant has knowingly and willfully continued to make, use, offer for sale, sell and/or import products and services that infringe the '421 patent.

87. Defendant's infringement of the '421 patent has caused and continues to cause damage to MFA in an amount to be determined at trial.

88. Defendant's infringement as herein alleged will continue to cause immediate and irreparable harm to MFA for which there is no adequate remedy at law, unless this Court enjoins and restrains such activities.

89. Defendant is liable to MFA for infringement of the '421 patent pursuant to 35 U.S.C. §271.

## **PRAYER FOR RELIEF**

WHEREFORE, MFA prays for the following relief:

1.  That judgment be entered in favor of MFA that the accused Defendant infringed directly, contributed to infringement, and infringed through inducement, and continues to infringe the '421 patent in violation of 35 U.S.C. §271;

2.  That MFA be granted an accounting of all damages sustained because of Defendant's infringement of MFA's patent;

3.  That MFA be awarded actual damages with prejudgment interest according to proof, and enhanced damages pursuant to 35 U.S.C. § 284 and as provided by law;

4.  That a permanent injunction be issued pursuant to 35 U.S.C. §283 enjoining Defendant, its officers, agents, servants, employees and all other persons acting in concert or participation with them from further infringement of MFA's patent, or if a permanent injunction is denied, issuance of an ongoing royalty under 35 U.S.C. §283 or such other authority as may support such ongoing royalty;

5.  That Defendant's infringement be deemed willful;

6.  That this case be decreed an "exceptional case" within the meaning of 35 U.S.C. §285,

and that reasonable attorneys' fees, expenses, and costs be awarded to MFA; and

7.  That MFA be awarded such further relief as the Court deems just and proper.

## **JURY DEMAND**

MFA hereby demands a jury trial as to all issues triable to a jury.


Dated:  May 5, 2021                    Respectfully submitted,


                                       By:     */s/ Perry S. Clegg*
                                               Perry S. Clegg (USB 7831)
                                                    pclegg@johnsonmartinlaw.com
                                               **JOHNSON & MARTIN, P.A.**
                                               50 W. Broadway, Suite 900
                                               Salt Lake City, UT 84101
                                               Tel.: (801) 783-3200
                                               Fax: (954) 206-0013

                                               *Attorneys for Plaintiff,*
                                               Modern Font Applications LLC